UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

=====================================================================

**CASE NO.:** CV 15-00525 SJO (FFMx)    **DATE:** August 25, 2015

**TITLE:** Super Chefs, Inc. v. Second Bite Foods, Inc. dba Stone Gate Foods, LLC

=====================================================================

**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                                              Not Present
Courtroom Clerk                                               Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**            **COUNSEL PRESENT FOR DEFENDANT:**

Not Present                                                   Not Present

=====================================================================

**PROCEEDINGS (in chambers): ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS** [Docket. No. 49]

This matter is before the Court on Defendant Second Bite Foods, Inc.'s ("Defendant") Partial Motion to Dismiss Plaintiff's First Amended Complaint ("Motion"), filed on July 20, 2015. Plaintiff Super Chefs, Inc. ("Plaintiff") filed an Opposition to the Motion on July 27, 2015, and Defendant filed its Reply on July 31, 2015. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for August 17, 2015. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **GRANTS** Defendant's Motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges the following facts. Plaintiff is a Nevada corporation with its headquarters in Los Angeles, California. (FAC ¶ 4, ECF No. 44.) Defendant Second Bite Foods, Inc. dba Stone Gate Foods is a Minnesota corporation with its headquarters in South Shakopee, Minnesota. (FAC ¶ 5.)

Convenience store 7-Eleven, Inc. ("7-11") has been looking for a supplier of bacon-wrapped hot dogs ("bacon dogs") for years without success. (FAC ¶ 8.) Plaintiff discovered 7-11's need for bacon dogs from a former 7-11 executive, and spent two and one-half years developing a method it identifies as the "slit method" in conjunction with a special oven. (FAC ¶¶ 9-11.) Plaintiff has filed a patent application for its distinctive slit method, although it has kept this method a secret from the general public. (FAC ¶¶ 19-20.) Plaintiff began looking for manufacturers for its bacon dogs, offering (1) its knowledge of how to make bacon dogs using its slit method, (2) its knowledge of how to "mass produce the bacon dogs efficiently," and (3) "access to [its] contacts at 7-11" in exchange for "a commission per bacon dog sold to any and all companies." (FAC ¶ 12.) Plaintiff approached Defendant in November 2012 regarding the possibility of entering into a manufacturing relationship. (FAC ¶ 34.)

Shortly thereafter, Defendant signed a Confidentiality Agreement and a Pro-Forma Manufacturing and Commission Agreement ("Commission Agreement") in exchange for access to Plaintiff's slit method for producing bacon dogs. (FAC ¶¶ 15-17.) In the Confidentiality Agreement, Defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  CV 15-00525 SJO (FFMx)          DATE:  August 25, 2015

agreed not to use the information Plaintiff provided to "unfairly compete or obtain unfair advantage" over Plaintiff in "any commercial activity which may be comparable to the commercial activity contemplated" in the agreement.  (FAC ¶¶ 15, 35; Ex. A ¶ 2(d).)  The Commission Agreement stated that Defendant would make products that were "researched and developed" by Plaintiff, for customers secured by Plaintiff, in exchange for a commission.  (FAC Ex. B ¶¶ 2, 4, 7.)  Defendant and Plaintiff discussed a commission of $0.07 per bacon dog produced and sold by Defendant using Plaintiff's slit method.  (FAC ¶ 23; Ex. C.)

Plaintiff provided 7-11 with bacon dog samples produced using its slit method during a meeting in 2014.  (FAC ¶ 21.)  7-11 informed Plaintiff that it was "interested in test marketing" Plaintiff's bacon dogs, and "would be interested in purchasing large quantities" if the test sales were successful.  (FAC ¶ 21.)  "7-11's interest in purchasing bacon dogs using the SLIT METHOD [sic] in conjunction with the special oven was not publicly known."  (FAC ¶ 21.)

Defendant offered to use Plaintiff's slit method to produce bacon dogs in exchange for "a payment of $.07 [sic] commission . . . for every bacon dog sold . . . to 7-11 as well as to any other company."  (FAC ¶¶ 44-45; Ex. C.)  Defendant then entered into an agreement with 7-11 to provide 7-11 with "mass-produced quantities of bacon dogs."  (FAC ¶ 48.)  Defendant currently sells 7-11 bacon dogs it manufactures with a "modified version" of Plaintiff's slit method, referred to as the "adhesive method."  (FAC ¶ 50.)  Defendant refused to pay Plaintiff the previously agreed-upon commission fee on or about October 2, 2014.  (FAC ¶ 52.)

Plaintiff filed the instant action on January 23, 2015, alleging breach of written contract, fraud, negligent misrepresentation, unjust enrichment, misappropriation of trade secrets, and unfair business practices.  (*See generally* Compl.)  On June 15, 2015, the Court dismissed Plaintiff's fraud, negligent misrepresentation, and unfair business practices claims with leave to amend and dismissed Plaintiff's unjust enrichment and misappropriation of trade secrets claims without leave to amend. (ECF No. 39.)  On June 22, 2015, the Court held a scheduling conference during which it allowed Plaintiff to amend its complaint by July 6, 2015, and permitted Plaintiff to "add another misappropriation of trade secrets" claim, but not add or expand on any other claims.  (ECF No. 40; ECF No. 46 at 6:8-22.)  Plaintiff filed its First Amended Complaint on July 6, 2015, again alleging breach of written contract, fraud, negligent misrepresentation, and unfair business practices, and for the first time alleging intentional interference with prospective economic relations and negligent interference with prospective economic relations.  (ECF No. 44.)  Defendant filed a Partial Motion to Dismiss the fraud, negligent misrepresentation, and intentional and negligent interference with prospective economic relations claims contained within the First Amended Complaint on July 20, 2015.  (ECF No. 49.)  Plaintiff filed an Opposition to the Motion on July 27, 2015.  (ECF No. 50.)  Defendant filed its Reply on July 31, 2015.  (ECF No. 52.)

///

II.     DISCUSSION

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 15-00525 SJO (FFMx)</u>   DATE: <u>August 25, 2015</u>

    A.    <u>Legal Standard for Second Bite's Motion to Dismiss</u>

Rule 12, which provides for dismissal of a plaintiff's cause of action for "failure to state a claim on which relief can be granted," *see* Fed. R. Civ. P. 12(b)(6), must be read in conjunction with Federal Rule of Civil Procedure 8(a) ("Rule 8").  *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Rule 8 requires that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although the pleader is not required to plead "detailed factual allegations" under Rule 8, this standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Pleadings that contain nothing more than legal conclusions or "a formulaic recitation of the elements of a cause of action" are insufficient.  *Id.*  (citation and quotation marks omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  Where a complaint pleads sufficient facts "to raise a right to relief above the speculative level," a court may not dismiss the complaint under 12(b)(6).  *See Twombly*, 550 U.S. at 555*.*

Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9") provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  This heightened standard applies because allegations of fraud "must be specific enough to give a defendant notice" of its allegedly fraudulent conduct so that the defendant "may defend against the charge."  *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1092 (N.D. Cal. 2014) (citing *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)).  As a general matter, allegations sounding in fraud, including allegations of fraudulent conduct used to support claims under the UCL, "must satisfy the particularity requirement of Rule 9(b)."  *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103-04 (9th Cir. 2003)).  "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false."  *Mui Ho v. Toyota Motor Corp.,* 931 F. Supp. 2d 987, 992 (N.D. Cal. 2013) (quoting *Cafasso, United States ex rel v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)) (internal quotation marks omitted) (formatting in original).  "Where a fraudulent omission is at issue, the requirements of Rule 9(b) are relaxed, but not eliminated."  *UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*, No. 14-3466, 2015 WL 4606077, at *8 (N.D. Cal. June 22, 2015).

///

    B.    <u>Plaintiffs' Claims</u>

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 15-00525 SJO (FFMx)</u>       DATE: <u>August 25, 2015</u>

    1.    <u>Fraud</u>

        a.    <u>Rule 9</u>

Under California law, the elements of fraud and misrepresentation are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.,* 34 Cal. 4th 979, 990 (2004). Rule 9 imposes strict pleading standards for claims of fraud or mistake that require Plaintiff to "state with particularity the circumstances constituting fraud or mistake." *See* Fed. R. Civ. P. 9(b); *see also Kimball v. Flagstar Bank F.S.B.,* 881 F. Supp. 2d 1209, 1217 (S.D. Cal. 2012).

In this case, Plaintiff has alleged that Second Bite "decided at some point prior to October, 2014 not to honor the Commission Agreement and agreed-upon $.07 commission," and that representations made to Plaintiff "between March and October 2014" were intended to "induce [Plaintiff] to continue to offer its considerable experience, expertise, innovation, hard work and capital investments to ensure the success of the bacon dog deal with 7-11." (FAC ¶ 89.) However, Plaintiff has failed to specify with particularity the "what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Mui Ho v. Toyota Motor Corp.,* 931 F. Supp. 2d at 992. Instead, Plaintiff only alleges that Defendants "knew at the time when made that their representations . . . were false and/or misleading." (FAC ¶ 89.) Indeed, Plaintiff does not point to a single actual representation made by Defendants between March and October of 2014 that is either false or misleading or was made with an intent to deceive the Plaintiff. Rather, Plaintiff alleges instances in which Plaintiff and Defendant Second Bite communicated with one another, and argues that these contacts, coupled with Defendants' alleged failure to mention that the Commission Agreement was no longer operational or that the commission had been revised, constitute fraud. Moreover, Plaintiff has failed to plausibly plead that Defendant intended not to honor the Commission Agreement; the only allegation that supports this assertion in any way is Defendant's alleged non-performance. *See UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*, No. 14-3466, 2015 WL 4606077, at *8 (N.D. Cal. June 22, 2015) (dismissing defendant's counterclaim of fraudulent concealment where claim that plaintiff did not intend to honor agreement was only supported by allegation of non-performance). Without alleging any specific false or misleading statements made by Defendant or any evidence leading to the reasonable inference that Defendant did not intend to honor the Commission Agreement, Plaintiff has failed to state with particularity the required elements to support a cause of action for fraud.

///

        b.    <u>Economic Loss Rule</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:   CV 15-00525 SJO (FFMx)          DATE:  August 25, 2015

The general contours of California's economic loss rule are discussed at length in this Court's previous order granting Defendant's partial motion to dismiss.  (ECF No. 39.)  In short, "[t]he fundamental rule in California is that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement."  *Oracle USA, Inc. v. XL Global Services, Inc.*, No. C 09-00537, 2009 WL 2084154, at *4 (N.D. Cal. July 13, 2009).  There are limited exceptions to this fundamental rule, namely where a physical injury results from the breach of a duty, an employee is wrongfully discharged in violation of a fundamental public policy, or a contract is fraudulently induced.  *Id.*

The FAC, like the original complaint, does not allege any harm above and beyond a broken contractual promise.  Plaintiff now claims Defendant committed fraud by "continu[ing] to lead [Plaintiff] to believe that it would honor the Commission Agreement and mutually agreed-upon $.07 commission, in order to induce" Plaintiff to continue to invest in the bacon dogs.  (FAC ¶ 89.)  However, the duties to which Plaintiff refer arise out of the contractual agreements set forth in the Confidentiality Agreement and Commission Agreement.  (*See* FAC Ex. A; Ex. B.)  That the fraudulent representations allegedly occurred after the formation of the contract, rather than before, does not alter the nature of the alleged harm or the available damages.  If anything, this fact cuts against the applicability of the economic loss rule , as fraudulent inducement to enter into a contract, but not fraudulent inducement to continue performance after the formation of a contract, is a recognized exception to the economic loss rule.  *Oracle*, 2009 WL 2084154, at *4. In this regard, Plaintiff's argument is similar to the one raised by the plaintiff and rejected by the court in *Foster Poultry Farms v. Alkar-Rapidpak-MP Equipment, Inc.*, 868 F. Supp. 2d 983 (E.D. Cal. 2012).  In *Foster*, the plaintiff argued that the defendant committed fraud when it submitted letters stating it would indemnify the plaintiff for defense costs associated with a patent infringement suit knowing that it would not in fact indemnify the plaintiff.  The court rejected this argument, noting that "[i]f the letter is a separate contract or agreement, the alleged misrepresentations contained therein cannot form the basis for a fraudulent inducement claim."  *Id.* at 994.  If, on the other hand, the letter was "an assurance or modification of the [purchase agreement], the damages sought by Foster Farms' fraud claim are the same as those arising from the alleged breach of contract, namely indemnification for the expenses incurred in defending the Unitherm suit and compensation for continuing its business relationship with Alkar."  *Id.*  Similarly, Plaintiff's allegation that Defendants continued to interact with Plaintiff knowing it would not honor previously entered agreements cannot constitute fraud.

The economic loss rule precludes tort claims for contract breaches.  Defendant's alleged failure to comply with the agreements does not violate a duty independent of the contract.  Because Plaintiff does not claim fraud with particularity, because Plaintiff does not allege a harm above and beyond a broken contractual promise, because Plaintiff has repeatedly failed to cure these deficiencies, and because any amendment of the claim would be futile, the Court **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiff's Third Cause of Action for Fraud.  *See* Fed. R. Civ. P. 15(a)(2); *Forman v. Davis*, 371 U.S. 178, 182 (1962).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 15-00525 SJO (FFMx)          DATE: August 25, 2015

2. Negligent Misrepresentation

In California, the elements of a cause of action for negligent misrepresentation are the same as those for a fraud and intentional misrepresentation claim "with the exception that the defendant need not actually know the representation is false." *Neilson v. Union Bank of Cal., N.A.,* 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003). Instead, with negligent misrepresentation, "it is sufficient to allege that the defendant lacked reasonable grounds to believe the representation was true." *Id.* (citations omitted). The FAC, like the original complaint, simply repeats the same generalized arguments proffered in the fraud cause of action. (FAC ¶¶ 93-94; Compl. ¶¶ 146-147.) Plaintiff has accordingly failed to state the specific particularity required to bring its negligent misrepresentation cause of action.

Further, as discussed above, the economic loss rule precludes tort claims for contract breaches. Plaintiff's negligent misrepresentation claim arises out of the contractual agreements in the Confidentiality Agreement and the Commission Agreement. (*See* FAC Ex. A; Ex. B.) Defendant's alleged failure to comply with the agreements does not violate a duty independent of the contract. Plaintiff does not allege a harm above and beyond a broken contractual promise. Moreover, Plaintiff has repeatedly failed to cure these deficiencies, and any amendment of the negligent misrepresentation claim would be futile. *See* Fed. R. Civ. P. 15(a)(2); *California ex rel. California Dep't of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 673 (9th Cir.2004) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). Accordingly, the Court **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiff's Fourth Cause of Action for Negligent Misrepresentation.

3. Intentional Interference with Prospective Economic Relations

To plead a claim for intentional interference with prospective business advantage, a plaintiff must allege "(1) a specific economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by defendant of the existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages proximately caused by the defendant's acts." *Panavision Int'l, L.P. v. Toeppen*, 945 F. Supp. 1296, 1305 (C.D. Cal.1996) (citing *Eichman v. Fotomat Corp.*, 871 F.2d 784, 800 (9th Cir. 1989); *Youst v. Longo*, 43 Cal.3d 64, 71 n.6, 233 Cal.Rptr. 294, 729 P.2d 728 (1987); *Buckaloo v. Johnson*, 14 Cal.3d 815, 826–29, 122 Cal.Rptr. 745, 537 P.2d 865 (1975)), *aff'd*, 141 F.3d 1316 (9th Cir.1998)). It is "the plaintiff's burden to prove, as an element of the cause of action itself, that the defendant's conduct was independently wrongful." *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D.Cal.2002). To satisfy the element of "wrongfulness," a plaintiff must plead conduct "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1159, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003).

Plaintiff has failed to plead sufficient information to support the first, third, fourth, and fifth elements of intentional interference with prospective business advantage. With respect to the first, fourth,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 15-00525 SJO (FFMx)</u>　　　　DATE: <u>August 25, 2015</u>

and fifth elements, the FAC alleges that Plaintiff's prototype "was well received by 7-11 representatives, who requested additional samples for market testing," and that "[a]bsent interference by any outside forces, SUPER CHEFS [sic] could have reasonably expected to realize significant profits from the resulting economic relationship with 7-11, including the sale of bacon dogs in about 8,000 stores operated by 7-11, as well as sales to other customers." (FAC ¶ 97.) Yet Plaintiff failed to identify the "other customers" to whom it might have sold bacon dogs, although "it is essential that the [claimant] allege facts showing that [d]efendant interfered with [a] relationship with a particular individual." *Damabeh v. 7–Eleven, Inc.*, No. 12–CV–01739, 2013 WL 1915867, at *10 (N.D. Cal. May 8, 2013). Moreover, with respect to sales Plaintiff might have made to 7-11, Plaintiff has not alleged facts that would lead to the plausible inference that 7-11 would have entered into a contract with Plaintiff had Defendant not interfered. Indeed, although Plaintiff alleges that it would have sold bacon dogs to approximately 8,000 stores operated by 7-11, the FAC earlier states that "SUPER CHEFS has been informed that the bacon dogs manufactured and sold by **DEFENDANTS** will be sold at approximately 8000 participating 7-11 stores in North America." (FAC ¶¶ 32, 97.) The FAC also states that Plaintiff "sought to enter into an agreement with a manufacturing company . . . [which] would provide its manufacturing facility or facilities and capability to mass produce the bacon dogs for 7-11 and other companies," that another manufacturer informed Plaintiff that Defendant "might be better suited for the [manufacturing] project," and that Defendant signed the Confidentiality Agreement and Commission Agreement as the manufacturing party. (FAC ¶¶ 12, 14.) Although the FAC alleges that Plaintiff sent samples that it manufactured to 7-11 on two occasions (FAC ¶¶ 21-22.), the FAC does not allege that Plaintiff, absent some manufacturing partner, had the capability of mass-producing and supplying bacon dogs to 7-11. Absent averments that Plaintiff could have fulfilled 7-11's bacon dog needs, either alone or through a third-party manufacturer, Plaintiff cannot establish a "significant economic relationship . . . containing the probability of future economic benefit to the plaintiff," actual disruption of the relationship, or damages proximately caused by Defendant's acts. *Panavision Int'l, L.P. v. Toeppen*, 945 F. Supp. 1296, 1305 (C.D. Cal.1996).

With respect to the third element, Plaintiff failed to specify intentional, wrongful acts on the part of the defendant designed to disrupt the relationship. Here, the claimed conduct "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard" appears to be the alleged fraud that underlies the third cause of action in the FAC. *Korea Supply Co.*, 29 Cal.4th at 1159. As discussed above, allegations of fraud are subject to the heightened pleading standard of Rule 9–a standard that Plaintiff has failed to meet. Having failed to plead sufficient factual material to satisfy four of the five elements of the tort of Intentional Interference with Prospective Economic Relations, the Court **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiff's Fifth Cause of Action.[1]

---

[1] Contrary to Plaintiff's "understanding" that the Court intended to permit Plaintiff to plead additional claims in an amended complaint during a June 22, 2015 scheduling conference

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 15-00525 SJO (FFMx)</u>　　　DATE: <u>August 25, 2015</u>

### 4. <u>Negligent Interference with Prospective Economic Relations</u>

The tort of negligent interference with prospective business advantage has many of the same elements as an intentional interference with prospective business advantage claim. To plead such a claim adequately, a plaintiff must allege that "(1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship." *N. Am. Chem. Co. v. Superior Court*, 59 Cal.App.4th 764, 786, 69 Cal.Rptr.2d 466 (1997). Plaintiff's negligent interference with prospective economic relations cause of action fails to adequately plead the first and fourth of these elements. As with Plaintiff's Intentional Interference with Prospective Economic Relations cause of action, the FAC fails to allege an economic relationship between Plaintiff and 7-11 that "contained a reasonably probable future economic benefit or advantage to" Plaintiff. The FAC likewise fails to state how Defendant's alleged negligence caused any economic harm to Plaintiff, for as noted above, the FAC does not allege that 7-11 would have agreed to a deal with Plaintiff absent manufacturing assistance from Defendant or a third party or that, even if 7-11 would have agreed to such a deal, that Plaintiff could have met 7-11's supply demands. Having failed to plead sufficient factual material to satisfy two elements of the tort of Intentional Interference with Prospective Economic Relations, the Court **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiff's Fifth Cause of Action.

### 5. <u>Unfair Business Practices (Cal. Bus. & Prof. Code § 17200 *et seq.*) Claim</u>

---

(Pl.'s Opp. to Def.'s Partial Mot. to Dismiss at 8-9), the Court in fact allowed Plaintiff "to add another misappropriation of trade secrets [claim] based on the civil statute" because the original trade secrets claim was brought under a statute that does not allow for a private right of action. (ECF No. 46 at 6:2-18.) The addition of an appropriate trade secrets cause of action was "the only count or claim that [the Court] allow[ed Plaintiff] to expand on." (*Id.* at 6:20-22.) Nevertheless, Plaintiff pled two novel causes of action in the FAC, namely the claims of intentional and negligent interference with prospective economic relations. Moreover, Plaintiff neither obtained written consent from Defendant nor properly sought the Court's leave to amend its complaint by adding two new causes of action. Fed. R. Civ. P. 15(a)(2). In light of Plaintiff's failure to follow the Court's directives and Federal Rule of Civil Procedure rule 15(a)(2), Plaintiff will not be permitted to amend its fifth and sixth causes of action.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 15-00525 SJO (FFMx)</u>   **DATE:** <u>August 25, 2015</u>

Plaintiff's unfair business practices claim in the FAC no longer references Defendant's use of Plaintiff's trade secrets, but otherwise remains largely unchanged from the claim recited in the original complaint. As noted in this Court's previous order, "a breach of contract **may** in fact form the predicate for Section 17200 claims, provided it also constitutes conduct that is "unlawful, or unfair, or fraudulent." *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1117 n. 12 (C.D. Cal. 2001) (emphasis added). Plaintiff has failed to properly state a cause of action for fraud, as discussed above. Accordingly, Plaintiff's Seventh Cause of Action is **DISMISSED WITHOUT LEAVE TO AMEND**.

III.    <u>RULING</u>

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**. Plaintiff's third, fourth, fifth, sixth, and seventh causes of action are **DISMISSED WITHOUT LEAVE TO AMEND**. If Plaintiff wishes to further amend its Complaint, Plaintiff must first seek leave of the Court.

IT IS SO ORDERED.